COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-366-CR 

    



 

MICHAEL SEAN LEWIS                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                                       ------------

I.  Introduction

In two points, Appellant Michael Sean Lewis appeals his
conviction for felony driving while intoxicated (DWI).[2]  We affirm. 

 








II.  Factual and
Procedural History

In the early hours of March 2, 2005, Fort Worth Police
Officer Deena Evans stopped Lewis on Camp Bowie for speeding and for failing to
wear a seatbelt.  Rather than pull over
to the curb, Lewis stopped his car in a left-turn lane.  Officer Evans testified that when she asked
Lewis for his driver=s license and proof of insurance, she
smelled alcohol coming from him and noticed his bloodshot eyes and slurred
speech.  When Officer Evans asked Lewis
from where he had come, he said, AKatie Lynn=s,@ a bar.  When she asked him if he had been drinking,
he said, AI had some.@  Officer Evans had Lewis exit his car and as
he did so, she noticed that his balance was swayed and unsteady.  She had Lewis perform numerous sobriety
tests; after he failed several of them, Officer Evans arrested him.  At the police station, Lewis performed
additional sobriety tests and agreed to submit a breath sample for alcohol
analysis.              A jury convicted Lewis of driving while intoxicated and
felony repetition[3]
and assessed punishment at seven years= imprisonment and
a $6,000 fine.  The trial court sentenced
Lewis to eight years= community supervision.  This appeal followed. 

 








III.  Factual
Sufficiency

In his second point, Lewis claims that the evidence
presented at trial was factually insufficient to support his conviction.     

A. Standard of Review

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).  

B.  Analysis 

 








Lewis argues that the evidence presented at trial was
factually insufficient to support his conviction because the video recording of
Officer Evans=s initial encounter with Lewis on Camp
Bowie did not show that he was intoxicated. According to Lewis, Officer Evans=s claim at trial
that Lewis had swayed and weaved during their encounter was not supported by
the video recording.  Lewis argues that this
video recording, which was taken Awithin minutes of
his operation of a vehicle,@ has greater
evidentiary weight than the breath tests that were taken over an hour later. 

Lewis is correct that the video recording of Officer Evans=s initial
encounter with him does not unequivocally show that Lewis was intoxicated.  Equally important, however, is that the
recording, with its poor lighting and grainy, relatively small images of
Officer Evans and Lewis, does not unequivocally show that Lewis was not
intoxicated.








Even more importantly, Lewis fails to address in any detail
Officer Evans=s trial testimony.  Officer Evans testified that after she pulled
Lewis over and began speaking to him, she noticed the smell of alcohol coming
from him, and she also noticed that his eyes were bloodshot and watered and
that his speech was slurred.  She subsequently
asked Lewis to get out of the car and, as he did so, he stumbled over a street
median.[4]  After Lewis was out of his car and Officer
Evans began speaking with him, she noticed that his balance was Aswayed and
unsteady@ and that, as he
walked to the rear of his vehicle, Ahis walk was
swayed, staggered and unsteady@ and A[h]is speech was
slurred.@   She then administered three field-sobriety
tests.  First, she administered the
horizontal gaze nystagmus (HGN) test and found a total of six cluesCthree in each eye.[5]  She then administered the walk-and-turn test
and found that Lewis exhibited three clues. 
Finally, she administered the one-leg stand and found that Lewis
exhibited one clue.  She then arrested
him for DWI. 

Giving due deference to the jury=s determinations
of Officer Evans=s demeanor and credibility, we cannot say
that the evidence of Lewis=s intoxication
when he was pulled over by Officer Evans is so weak that the verdict is clearly
wrong and manifestly unjust.  See Watson, 204 S.W.3d at 414B15, 417; Johnson, 23 S.W.3d at 11.  Thus, we hold that the evidence is factually
sufficient to support Lewis=s conviction.  We overrule Lewis=s second point.

IV.  APer Se@ Theory of
Intoxication








In his first point, Lewis argues that the trial court erred
when it submitted to the jury the Aper se@ theory of
intoxication.  In its indictment, the
State alleged that Lewis had Aoperate[d] a motor
vehicle in a public place while [he] was intoxicated by not having the normal
use of his mental or physical faculties by reason of the introduction of
alcohol into his body or by having an alcohol concentration of at least 0.08.@[6]  After the State rested its case, Lewis moved
for a directed verdict on the portion of the indictment that alleged that Lewis
had a blood-alcohol concentration of 0.08. 
The trial court denied the motion. 








In its charge to the jury, the trial court defined Aintoxicated@ as A(A) not having the
normal use of one=s mental or physical faculties by reason
of the introduction of alcohol into the body; OR (B)
having an alcohol concentration of 0.08 or more.@  The charge authorized the jury to find Lewis
guilty if it found, among other things, that Lewis had been operating a motor
vehicle while he Awas intoxicated by not having the normal
use of his mental or physical faculties by reason of the introduction of
alcohol into his body or by having an alcohol concentration of at least 0.08.@  Lewis objected to the jury instruction on the
Aper se@ theory because
the State had failed to present sufficient evidence, i.e., evidence of Lewis=s blood-alcohol
content at the time that he operated his vehicle, to support the Aper se@ theory.  The trial court overruled his objection.[7]              A.
Standard of Review








Appellate review of error in
a jury charge involves a two-step process. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731B32.  Error in the charge, if
timely objected to in the trial court, requires reversal if the error was Acalculated to injure the rights of [the] defendant,@ which means no more than that there must be some harm to the
accused from the error.  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 2006); see also Abdnor, 871 S.W.2d at 731B32; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985) (op. on reh=g).  In other words, a properly preserved error
will require reversal as long as the error is not harmless.  Almanza, 686 S.W.2d at 171.  In making this determination, Athe actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.@  Id.; see also Ovalle
v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

B. Analysis

 

Lewis argues that the trial court erred when it submitted
to the jury the Aper se@ theory of
intoxication.  

Texas law defines @intoxicated@ as










not having the
normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two
or more of those substances, or any other substance into the body; or . . .
having an alcohol concentration of 0.08 or more.

Tex. Penal Code Ann. ' 49.01(2) (Vernon
2003).  The first definition is known as
the Aimpairment@ theory of intoxication;
the second is known as the Aper se@ theory of
intoxication.  Bagheri v. State,
119 S.W.3d 755, 756 n.1 (Tex. Crim. App. 2003). 
These two theories of intoxication do not involve separate violations of
the law.  Id. at 762.  They set forth Aalternate means by
which the State may prove intoxication, rather than alternate means of committing
the offense.@  Id.  When a trial court submits alternate means of
committing an offense, the evidence is sufficient to support a general verdict
of Aguilty@ if it is
sufficient to prove any one of the alleged means.  Id.; Reardon v. State, 695
S.W.2d 331, 334 (Tex. App.CHouston [1st
Dist.] 1985, no pet.).          

Given the testimony of Officer Evans, the
evidence submitted at trial was both legally and factually sufficient to prove
the first definition of Aintoxicated,@ which was also
submitted to the jury.  That is, the
evidence was sufficient to establish that Lewis did Anot hav[e] the
normal use of mental or physical faculties by reason of the introduction of
alcohol.@  See Tex.
Penal Code Ann. ' 49.01(2)(A).  Thus, the evidence was sufficient to support
the jury=s general verdict
of Aguilty.@  








It
is true that in its arguments to the jury, the State pointed out that the
jurors did not need to be unanimous in deciding in which manner Lewis was
intoxicated, i.e., not having normal use of mental faculties, not having normal
use of physical faculties or blood-alcohol content of at least 0.08.  But it is also true that in these same
arguments, the State emphasized Officer Evans=s testimony regarding her encounter
with Lewis at least as much as it emphasized the evidence concerning Lewis=s blood-alcohol content.  Thus, assuming, without deciding, that the
trial court erred by including the Aper se@ theory of intoxication in the jury charge, we conclude
that any charge error was harmless.  See
Almanza, 686 S.W.2d at 171; Ovalle, 13 S.W.3d at
786.  We overrule Lewis=s first point.

 

V.  Conclusion

 

Having overruled both of Lewis=s points, we affirm the trial court=s judgment.

 

PER CURIAM

 

PANEL F:    MCCOY,
HOLMAN, and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
June 12, 2008











[1]See Tex. R. App. P. 47.4.





[2]See Tex.
Penal Code Ann. ' 49.09(b)(2) (Vernon Supp. 2007)
(stating that DWI is a felony if the defendant has two previous DWI
convictions).





[3]At trial, both parties stipulated
that Lewis had two prior DWI convictions. 






[4]The video recording also shows
this.





[5]When asked by the State how many
clues indicate intoxication, Officer Evans answered, ASixCwell, four.@





[6]The indictment also included a
second paragraph alleging that Lewis had

 

operate[d] a motor vehicle in a public
place while [he] was intoxicated by not having the normal use of his mental or
physical faculties by reason of the introduction of alcohol, or by having an
alcohol concentration of at least 0.08, a controlled substance, a drug, a
dangerous drug, or a combination of two or more of these substances into his
body.

 

The State
subsequently abandoned this paragraph.





[7]The State argues that because Lewis=s claim of jury-charge error is
based on his motion for a directed verdict, Athis court should limit its review to the denial of said
motion.@ 
But the following exchange between Lewis=s attorney and the trial court
makes clear that Lewis specifically objected to the jury chargeCit was the trial court that linked
Lewis=s jury-charge objection to his
motion for a directed verdict:

 

[Trial Court]: . . . I understand
the Defense objects to the two phrases in the charge which define the .08
theory and apply in the application paragraph.

Based on the
Court=s failure to grant the directed
verdict, other than the objection to those two parts of the charge, do you have
any other objections to the charge?

 

[Lewis=s Attorney]: No.  Other than those, we don=t.

 

[Trial Court]: All right.  Any requested charges that were not
granted?  I did put the Fifth Amendment
in there for you already.

 

[Lewis=s Attorney]: No.

 

[Trial Court]: Then the objection
to the .08 language is still overruled.